UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TAIWAN ALLEN, | ) |
| Petitioner, | ) 2:09-cv-1756-RLH-GWF |
| vs. | ) **ORDER** |
| DWIGHT NEVEN, *et al.,* | ) |
| Respondents. | ) |

Taiwan Allen, a Nevada prisoner represented by counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (docket #1) raising three grounds for relief. The matter is before the Court on the merits of his claims.

**I.    Procedural Background**

Petitioner was convicted after a jury trial of first degree murder with the use of a deadly weapon and was sentenced to two consecutive life terms without the possibility of parole. He filed a direct appeal, which was denied. He then filed a post-conviction petition and was appointed counsel to assist him. An evidentiary hearing was conducted and the state district court denied relief. On appeal of this denial, petitioner raised five assertions of ineffective assistance of trial counsel. The Nevada Supreme Court affirmed the lower court's decision. On September 3, 2009, with the assistance of counsel petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this action. Respondents moved to dismiss the petition, contending that three subparts of

ground one are unexhausted. That motion was denied and respondents filed their answer (docket #18). Petitioner has not taken the opportunity to file a reply. The Court's determination of the merits of petitioner's claims is discussed below. The petition shall be denied.

**III.     Factual Background**

The evidence admitted at trial supports the following summary of events.

Petitioner and the victim, Yashoma Clemons, had known each other for a little over a year and had been sharing a single family residence in Clark County, Nevada, with Ms. Clemons' four young children on and off during that time. On April 14, 2003, sometime before ten p.m., petitioner and Ms. Clemons had been arguing in the master bedroom of the house while she prepared to go to work. Nine-year-old Sacresha Bennett, the victim's eldest daughter, was down the hall in her bedroom during the argument. She heard a struggle and gunshots. Sacresha did not leave her bedroom, but the younger children joined her there, remaining with her for the rest of the night. Petitioner left the house early the next morning, locking the master bedroom door. He did not return. Although Sacresha was certain that her mother lay dead in her bedroom, she was afraid to call for help. Some five days later, petitioner's sister arrived at the house, found the children there alone and called police. Ms. Clemons was found in the master bedroom shot to death.

Petitioner was arrested on May 2, 2003, in Wisconsin. The investigating officers from Nevada observed healing wounds to his neck, chest and lower abdomen. Petitioner reported to police that during the argument with Ms. Clemons, she retrieved a gun from the bedroom closet and began to shoot at him. Petitioner reported he could not recall how he gained control of the gun, claiming his recollection was "all foggy." He admitted he knew that Ms. Clemons was dead. Petitioner was returned to Nevada and stood trial for first degree murder.

**III.     Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thea AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of § 2254 "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003), citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000); *Bell v. Cone*, 535 U.S. at 694.

Furthermore, a state court decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer,* 538 U.S. at 73. The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* The state court's factual determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

**IV.  Discussion**

Petitioner raised three grounds for relief including a claim he received ineffective

assistance of counsel during trial litigation, a claim he was denied due process as the result of prosecutorial misconduct, and a claim that he was denied due process because the trial court refused to grant a competency hearing before sentencing.

### Ground One

Petitioner claims he was denied the effective assistance of counsel during trial in violation of his Sixth and Fourteenth Amendment rights. Petitioner raises several areas of ineffective performance.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court established the standards by which claims of ineffective counsel are to be measured. The Court propounded a two prong test: A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

Regarding the "effectiveness prong," the *Strickland* Court expressly declined to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. *Id*. Defense counsel's duties are not to be defined so exhaustively as to give rise to a "checklist for judicial evaluation ... [because] [a]ny such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id*.

The *Strickland* Court instructed that review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the "distorting effects of hindsight." *Id.* at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance ... [and] the [petitioner] must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id*. (citation omitted).

Construing the Sixth Amendment to guarantee not effective counsel *per se*, but rather a fair proceeding with a reliable outcome, the *Strickland* Court concluded that demonstrating that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. In order to satisfy *Strickland's* second prong, the defendant must show that the attorney's sub-par performance prejudiced the defense. *Id*. at 691-92. The test is whether there is a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. *Id*. at 691-94. The Court defined reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

<u>Counsel was ineffective in his investigation</u>

a. <u>Sachresha Bennett</u>

Petitioner argues that the only viable defense offered by the facts and the evidence was one of self-defense. He contends that counsel's failure to thoroughly investigate the competency of Sacresha Bennett (Sacresha) as a child witness, undermined that theory of defense. He argues that counsel should have discovered and provided the trial court with a school multi-disciplinary report as evidence of her incompetence and should have used the evidence to impeach the child's testimony.

Counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. More specifically, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id. See also Siripongs v. Calderon* (Siripongs II ), 133 F.3d 732, 734 (9th Cir.1998) ; *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir.1998); *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir.1995).

During the preliminary hearing, Sacresha testified that she heard her mother squeal and saw shadows of a struggle on the closet door of her mother's bedroom before she heard the

1  gunshots. Under voir dire, Sacresha testified that she was unable to remember the name of her
2  school, her teacher or of her best friend. She also testified that she had taken medication because she
3  saw things that weren't there; "colorful stuff and things that others couldn't see." Exhibit 11.
4  Counsel objected to her testimony, but the court allowed Sacresha to testify. *Id.*
5        Prior to trial, counsel filed a motion to exclude Sacresha's testimony. Exhibit 19.
6  The court conducted a hearing, allowing counsel to again test her memory and competence. Exhibit
7  32-A. Sacresha appeared much better prepared to testify. Her memory and recall were much
8  improved. Thereafter, the court ruled that the child was competent and allowed her to testify. *Id.*
9  Thus, the question of Sacresha's competence to testify was thoroughly tested by counsel and the
10 court. Moreover, it appears from the record that counsel was aware of the school report, as his
11 motion to exclude Sacresha's testimony made reference to it. *See* Exhibit 19. The state court
12 concluded that presentation of the report would not have persuaded it to exclude the child's
13 testimony.
14       This claim was considered and denied by the Nevada Supreme Court on appeal from
15 denial of the post-conviction petition. Exhibit 87. Reviewing the record, the court concluded that
16 the "child witness was thoroughly questioned by counsel at the preliminary hearing concerning her
17 memory and truthfulness,...hallucinations and medications she was taking and [counsel] used the
18 questioning to argue that the child witness was not competent to testify." *Id.* at 2. The court found
19 that "substantial evidence support[ed] the district court's finding that appellant's trial counsel was
20 not ineffective for failing to present the school system's report...." *Id.* at 3.
21      b.   Lorenzo McKnight[1]
22       Petitioner also complains that counsel did not properly investigate Lorenzo
23 McKnight, Ms. Clemons' ex-husband, who counsel anticipated would testify that Ms. Clemons had
24 _____
25   [1] The Court notes a discrepancy in the record as to this witness's name. In the evidentiary hearing transcript, the witness is identified as LaFonzo McKnight.
26

1  violent propensities based upon police reports of a domestic disturbance wherein McKnight reported
2  to police that Ms. Clemons had assaulted him. Petitioner claims counsel was ineffective for telling
3  the jury in opening statements that McKnight would testify that Clemons was violent, without having
4  first interviewed him, especially where his testimony was the opposite of counsel's prediction.
5  When called to the stand, McKnight testified that Ms. Clemons was never aggressive.

6  In reviewing this claim, the Nevada Supreme Court concluded that petitioner had not
7  met his burden to show counsel was ineffective in this regard or that he had been prejudiced. At the
8  state court evidentiary hearing, counsel testified that he had been unable to locate McKnight prior to
9  trial, but that he had police reports which indicated that Ms. Clemons had assaulted her ex-husband
10 "and counsel believed that the ex-husband would testify consistent with those police reports."
11 Exhibit 87, p.6. The Nevada Supreme Court upheld the trial court's determinations on this claim.

12 Petitioner has not demonstrated that the Nevada Supreme Court's handling of this
13 claim was objectively unreasonable or contrary to Supreme Court law. No relief is warranted.

<u>Counsel's Theory of Gun Play</u>

15 Petitioner next argues that counsel improperly told the jury in opening statements that
16 Ms. Clemons owned a .38 caliber gun. He also argues that counsel's decision to present expert
17 testimony that a two gun battle ensued between petitioner and Ms. Clemons, supporting his claim of
18 self-defense, was prejudicial where there was no evidence presented that Ms. Clemons owned a gun
19 at the time of the shooting.

20 Counsel is granted great leeway in making strategic decisions regarding presentation
21 of the defense. *Strickland,* 466 U.S. at 689. To succeed on this claim, petitioner must demonstrate
22 that such decisions put counsel's performance outside the objective standard of reasonableness
23 before the court need even look to prejudice. Given the evidence that was available and presented at
24 trial, the Nevada Supreme Court's conclusion that the jury could rationally have inferred that Ms.
25 Clemons owned a gun from the fact that she owned the ammunition and that she was once a

7

correctional officer was not erroneous.  *See* Exhibit 87, p. 7.

<u>Counsel failed to bring evidence of petitioner's emergency medical treatment</u>.

Petitioner also complains that trial counsel was ineffective for failing to investigate petitioner's wounds and their treatment and for failing to present evidence to the jury of those injuries and treatment to support his claim of self-defense.  He suggests that the treating doctor would have been able to provide testimony regarding the "location, depth, type of injuries" and could have provided an opinion on how and when the injuries were sustained.

Petitioner has failed to show that he was prejudiced by this asserted failure.  The Nevada Supreme Court stated:

> At the evidentiary hearing, appellant's trial counsel testified that he was not told by appellant or by appellant's family prior to trial about a doctor in Wisconsin or about medical treatment in Wisconsin.  In addition, at trial, the jury was presented with evidence that appellant had suffered gunshot wounds around the time of the shooting.  Appellant failed to demonstrate that there was a reasonable probability of a different outcome of the proceedings had his trial counsel interviewed or presented testimony from the Wisconsin doctor.  Substantial evidence supports the district court's finding that appellant's trial counsel was not ineffective for failing to interview or present testimony from the Wisconsin doctor, and thus, we conclude that the district court did not err in denying this claim.

Exhibit 87, p. 5.  Having applied the proper federal legal standard and having made a reasonable interpretation of the facts in evidence, the Nevada Supreme Court's determination must be upheld under 28 U.S.C. § 2254.

<u>Counsel failed to obtain an expert to discuss gunshot residue</u>.

Petitioner argues that counsel was ineffective for failing to obtain an expert to examine and discuss the evidence of gunshot residue on the victim's hands.  Petitioner notes that although the victim's hands were bagged by the crime scene investigators, no one examined her hands or tested them for the presence of gunshot residue.  Petitioner contends that evidence accumulated on the victim's hands could have been independently reviewed and used to support his claim of self-defense.

1   At the evidentiary hearing, counsel testified that he did not engage such an expert because he believed that type of testimony would be harmful to petitioner's case. As previously noted, the strategy of criminal defense is left to counsel and it is presumed to be reasonable. *Strickland,* 644 U.S. at 689. Petitioner has not shown that counsel's performance was unreasonable or that he was prejudiced from this alleged shortcoming.

<u>Counsel failed to transmit and discuss a plea offer.</u>

The decision on how to plead and whether to accept or reject a plea offer lies with the defendant. *Alvord v. Wainwright,* 469 U.S. 956, 959 (1984). Petitioner complains that his counsel failed to transmit a plea offer.[2] Contrary to this allegaton, counsel testified at the state court evidentiary hearing that he had, in fact, discussed the only plea offer with appellant, who had rejected it. Exhibit 74, pp. 75-76. Thus, the claim is belied by the record. It was similarly rejected by the Nevada Supreme Court in affirming the trial court's post-conviction decision. Exhibit 87, p. 7.

Petitioner has failed to meet his burden to show that his trial counsel failed to perform to an objective standard of reasonableness or that his performance prejudiced the defense. The state courts addressed the claims in light of the proper federal legal standard and the factual determinations were reasonable in light of the evidence presented. No relief is warranted on petitioner's ground one.

Ground Two

Petitioner next claims that he was denied due process as guaranteed by the Fifth and Fourteenth Amendments where the prosecution engaged in misconduct by presenting the district attorney, David Rogers, who informed the jury of the pre-sentencing altercation between petitioner and Mr. Stanton.

---

[2] In the state court evidentiary hearing, the claim was advanced as follows: "The Defendant and his family are of the position that there was never any attempt to negotiate in this case, either at preliminary, pretrial or during trial, and so the allegation is failure to even attempt to negotiate a case to see if there is an offer on a case where you're looking at a life without sentence.. . ." Exhibit 74, p. 75.

1    According to the petition, the petitioner approached Mr. Stanton at the conclusion of
2 the guilt phase and, acting irrationally and shockingly, physically hit him.  The assault left the
3 prosecutor unable to continue and the District Attorney of Clark Count, Mr. Roger, well known for
4 his recent prosecution of the a high-profile murder, appeared in his stead.  During closing arguments,
5 petitioner argues that Roger improperly testified as to the attack and suggested that if the jury
6 allowed petitioner a possibility of parole they would be in danger.

7    In determining a claim of prosecutorial misconduct, the court must determine
8 "whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting
9 conviction a denial of due process.' " *Darden v. Wainwright* 477 U.S. 168, 181 (1986), quoting
10 *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).  Petitioner claims that using a highly noted public
11 official to convince the trial jury to give petitioner the maximum sentence was improper and denied
12 him due process.

13    This claim fails as petitioner has not demonstrated that the state court's determination
14 was contrary to or an unreasonable application of clearly established federal law.  The Nevada
15 Supreme Court determined that

16   The substitution of counsel in this case by the district attorney's
   office is proper.  Both Allen and his counsel were present when
17   Allen attacked Stanton.  We do not believe that Allen, who
   procured Stanton's unavailability, has any grounds to complain that
18   the State replaced Stanton with another prosecutor.

19   The severity of Stanton's injuries put both Allen and his counsel on
   notice that Stanton could not proceed and that Roger was at least a
20   possible replacement.

21   Thus, the district attorney was free to substitute prosecutors.
22 Exhibit 55, p. 10.

23    The court went on to note that evidence of petitioner's violent acts was properly
24 admitted at sentencing "to determine whether the defendant poses a future threat to society." *Id.*
25    "Consideration of a defendant's past conduct as indicative of his probable future
26

behavior is an inevitable and not undesirable element of criminal sentencing." *Skipper v. South Carolina,* 476 U.S. 1, 5 (1986). Thus, the state court's decision was proper and petitioner is not entitled to relief on ground two of his petition.

Ground Three

Petitioner claims he was denied due process when the state trial court refused to hold a competency hearing during the penalty phase of his trial.

Whether a defendant is competent to stand trial is a question of federal constitutional law. Due process forbids a state to try or convict a defendant who is incompetent to stand trial. *Drope v. Missouri*, 420 U.S. 162 (1975); *Pate v. Robinson*, 383 U.S. 375 (1966). Competence requires the defendant to have the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope*, 420 U.S., at 171. To determine whether the judge wrongly denied a competency hearing, a defendant must show that there was "substantial evidence" that he was mentally incompetent to stand trial. *Moore v. United States*, 464 F.2d 663, 666 (9th Cir.1972).

According to the petition, counsel asked the court to briefly stay the proceedings to allow petitioner to be examined pursuant to NRS 178.405, considering "facts which established a reasonable doubt about his competency" including the fact that petitioner had been shot in the head several months prior, petitioner had recently undergone a craniotomy, petitioner still had bullet fragments in his head, and petitioner's recent "irrational and shocking behavior - attacking an attorney inside the courtroom." Petition, p. 12.

At the time of the request, the trial court entertained argument as to whether petitioner's attack on the prosecutor warranted a competency hearing. The court concluded that the attack was an angry outburst, but that it provided no evidence that petitioner was incompetent. Exhibit 41, pp 11-14. Thus, the court considered whether there was substantial evidence of incompetency or a reasonable doubt that petitioner was able to assist in his defense, found none, and
11

rightfully determined that there was no need for a competency hearing. The Nevada Supreme Court's rejection of this claim was proper under 28 U.S.C. § 2254 and no relief is warranted on this claim.

**V.      Conclusion**

The petition for writ of habeas corpus shall be denied in this instance. Petitioner has failed to demonstrate that the state courts' review of his claims resulted in a decision that was contrary to or an unreasonable application of clearly established federal law or that the factual findings were unreasonable in light of the evidence presented.

**VI.     Certificate of appealability**

In order to proceed with any appeal of this decision, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. Rule 11(a). This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for

issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED.**

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue. The Clerk shall enter judgment accordingly.

Dated this 4th day of January, 2011.

_____
CHIEF UNITED STATES DISTRICT JUDGE